J. Hassell GRIFFEY, Plaintiff,

v.

Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 68-C-56-A.

United States District Court
W. D. Virginia,
Abingdon Division.

April 15, 1969.

Ronald W. May, Pikeville, Ky., and W. Clyde Dennis, Grundy, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action comes before this court pursuant to section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a decision of the Secretary of Health, Education and Welfare. The decision holds that J. Hassell Griffey is not entitled to either a period of disability or to disability insurance benefits on his application filed on March 13, 1967. The decision, rendered by a hearing examiner on January 23, 1968, became "final" when the Appeals Council denied the claimant's request for review on May 2, 1968.

J. Hassell Griffey filed an application for disability insurance benefits on March 13, 1967, alleging that a "bad heart," ulcers and nervousness prevented him from working as of July 15, 1966. On June 14, 1967, the application was denied. Upon reconsideration the application was again denied and the claimant was so notified by letter dated August 18, 1967.

Believing these adverse decisions to be erroneous, the claimant requested a hearing. A hearing was held in Pikeville, Kentucky on November 13, 1967. The claimant appeared and was the only person to testify. Several medical reports and other documents were introduced into the record. At the hearing the claimant agreed to submit to an examination by a specialist of the Department of Vocational Rehabilitation. The examination was performed by Dr. Pierce D. Nelson, a specialist in neuropsychiatry, on December 14, 1967, at the Mental Health Clinic in Wise, Virginia. The formal record was reopened on January 22, 1968, to admit into evidence the report by Dr. Nelson and also a copy of his professional qualifications. By a decision dated January 23, 1968, the hearing examiner held that the claimant was not under a disability as defined by the Social Security Act as amended in 1965 and hence not entitled to a period of disability or to disability insurance benefits under the provisions of Sections 216(i) and 223, respectively, of the Social Security Act, as amended in 1967. The claimant, at this juncture hired an attorney and with his aid, requested that the Appeals Council review the hearing examiner's decision. The review was delayed at the request of the claimant's attorney, in order to allow the attorney an opportunity to examine the record and to submit any written memorandum or further evidence which he deemed pertinent. Additional evidence, consisting of correspondence between the attorney and the claimant's family doctor, was admitted into the record on April 24, 1968. The Appeals Council, on May 2, 1968, denied the claimant's request for review thereby affirming the hearing examiner's decision. The decision is limited to May 2, 1968, the date the decision became final since the claimant will continue to meet the special earnings requirement of the Act through March 31, 1971.

J. Hassell Griffey was born on July 12, 1922, in Rose Ann, Virginia. Possessor of a third grade education, the claimant has worked in coal mines since he was eighteen years of age except for a brief period when he worked as a handyman for a trailer company. Previous to commencing work in the mines he worked for two years as a handyman for a mining company on the outside of the mines. The claimant is married and has five young children at home. He does not own an automobile although he has a driver's license.

The record contains a medical report by Dr. Joshua P. Sutherland, a general practitioner in Grundy, Virginia. The report indicates that Dr. Sutherland had last examined the claimant in March, 1966, and in a report dated March 17, 1967, the doctor offered the following diagnosis: (1) Gastric ulcer (2) Hypertrophic arthritis of spine (3) Chronic Bronchitis and (4) Anxiety syndrome. In a statement bearing Dr. Sutherland's signature and submitted during the oral hearing, it was the doctor's opinion that the above diagnosis prevented the claimant from engaging in gainful employment.

On May 22, 1967, the claimant was examined by Dr. J. A. Robinson, a full-time specialist in internal medicine, at the Clinch Valley Clinic Hospital in Richlands, Virginia. The report states that the claimant complains of vague pains around his heart and a sensation of a load on his heart. The claimant stated that these pains, which forced him to quit work in July, 1966, are of an aching nature, usually worse in the late afternoon or at night and that during the past two years the pain has been so severe that hypodermic injections by a physician were necessary in order to obtain relief. The chest pain does not seem to be provoked by exercise. After relating a history of the claimant's ailments the report states: that the patient shows no definite evidence of psychoneurosis; that temperature and pulse rates were normal, blood pressure 165/96, height 67 inches and weight 137 pounds; that claimant has no teeth; that vision in the right eye is 20/50 and in the left 20/25; that the eyegrounds

appear normal; that heart sounds are regular and no murmurs were detected; that the peripheral arteries are not particularly thickened; that the lungs were normal by physical examination; that there was little sensitiveness about the entire abdomen; that the fingernails were slightly curved; that none of the joints were particularly enlarged and none were stiffened or sensitive; that there was no evidence of muscle atrophy; that the urinalysis is normal, blood serology negative, blood uric acid normal and rheumatoid agglutination nonreactive; that the EKG tracing is normal and shows no evidence of heart disease; that in view of the normal EKG tracing and the practically normal chest x-ray report the pulmonary function studies were not performed. The report ends with the following paragraph:

> I can find no evidence of serious disease in this case. Possibily he has been having mild bouts of pleuritic pain or a radicuhitis about his chest wall and he very probably has developed a cardiac neurosis.

The record also contains a report dated July 3, 1967, by Dr. U. O. Sanders, a general practitioner in Grundy, Virginia. The extremely brief report is written illegibly making it impossible for the court to read it. However the record does contain a statement, written upon paper bearing the letterhead of Dr. Sanders' office, which was submitted during the hearing that simply reads, "This patient has been sick for some time and not able to work." The statement is dated November 9, 1967.

The claimant was seen in the outpatient clinic of Grundy, Virginia, by Dr. B. D. Berry on July 5, 1965, with complaints of chest pains around the heart after eating a big supper. A physical examination and EKG were negative. Medication was prescribed and the claimant was allowed to go home. The diagnosis was pylorospasm.

On November 26, 1965, the claimant was seen by Dr. Ralph W. Hess at the outpatient clinic complaining of a headache, chills and fever. The diagnosis was an upper respiratory infection and the claimant was given a prescription for antihistamines and nose spray. Dr. Hess, on September 25, 1967, treated the claimant for osteoarthritis and peptic ulcer disease.

Dr. Pierce Nelson, a specialist in psychiatry, examined the claimant at the Mental Health Clinic in Wise, Virginia and submitted a report dated December 14, 1967. The report is supplemental to the oral hearing and was made a part of the record on January 22, 1968. The claimant is estimated to be functioning in the borderline normal range of intelligence. The Draw-a-Person test is schizoid and hysterical with feelings of helplessness and inability to meet environmental demands. The claimant's mental status reveals a fairly well developed, well nourished person capable of "a lot of good logical reasoning and thinking prior to answering questions." He is able to do simple calculations. The report states that:

> * * * he is mildly anxious and tense and tends to focus on his heart as a problem that makes him disabled, arthritis of his shoulder which makes him disabled, and other somatic complaints. He tends to distort and magnify and color these symptoms in an effort to explain his difficulty in functioning at work. It is quite apparent that he has had irregular type of employment, has been rather inadequate in his adjustments, economically speaking and interpersonally and socially.

The neurological examination was essentially within normal functional limits. The claimant's diagnosis was described as "a psychoneurotic disorder with emotional overlay to problems of cardiac function, pulmonary function * * *" These were stated to be merely psychiatric symptoms which do not warrant a psychiatric diagnosis. Dr. Nelson concluded from the claimant's ability to perform in the neurological examination and his overall performance that a clas-

sical diagnosis according to APA standards was not warranted even though the symptom is rather prominent along with the somatic overlay to the heart function.

After the hearing examiner's decision, but before consideration by the Appeals Council, the claimant's attorney, by letter, questioned Dr. J. P. Sutherland as to whether the claimant's impairments are of the type that will have periods of remission and might not be discovered by a physician on a single consultative examination. This letter, along with the doctor's reply letter, are included in the record. The reply letter again states the doctor's previous diagnosis as set forth earlier in this opinion and states:

> The physical impairments will have their period of remission but an individual with low motivation and incentive will be handicapped by much less than a so-called average. The family physician is in an excellent position to observe the whole individual and I am sure the consulting physician does not get the same picture after seeing the individual for one time only. ·

The record also contains reports of disability interviews and the claimant's earnings certification.

The claimant has the burden of proving that he was under a disability as defined by the Act. 42 U.S.C.A. § 416(i), Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.1962), and the Secretary does not have the burden of making an initial showing of non-disability, King v. Gardner, 370 F.2d 652 (6th Cir.1967); Justice v. Gardner, 360 F.2d 998 (6th Cir.1966). To be disabled within the meaning of the Social Security Act the claimant must show an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.A. § 423(d) (1) (A). The claimant must support his allegations by medical evidence, although no unreasonable or unjust obstacles may be put in his way. Morgan v. Gardner, 264 F.Supp. 576 (S. D.Miss.1967). The Social Security regulations require that subjective complaints be substantiated by objective clinical and laboratory findings. 20 C. F.R. 404.1523 (1968). The hearing examiner, upon consideration of all the evidence in the case, including the claimant's subjective complaints, held that the impairments are not of such severity as to prevent the claimant from engaging in any substantial activity. Specifically, the hearing examiner found that the claimant's impairments, neither singly or in combination, prevent him from returning to his former employment in the coal mines. The claimant alleged heart trouble, nervousness and ulcers as his disabling impairments in his application for disability insurance benefits. However, none of the claimant's treating doctors mention heart trouble in their reports and Dr. J. A. Robinson, a specialist in internal medicine, upon examining the claimant could find no irregular heart sounds or murmurs but to the contrary evaluated the EKG tracings as normal and found no evidence of any serious disease in the case. As to the claimant's nervousness, Dr. Pierce Nelson found that the claimant's neurological examination was within average normal functional limits and that no further neurologic diagnosis was warranted by his examination. Dr. Nelson also noted that the claimant "tends to distort and magnify and color [his] symptoms in an effort to explain his difficulty in functioning at work." The hearing examiner accepted as demonstrated that the claimant has a recurrent gastric ulcer for which medication is taken, but because of its history and the claimant's own testimony he concluded that it was not disabling. The claimant testified that he takes Maalox for his stomach and is also on a diet, but Dr. Robinson noted in the claimant's medical history that there was no history of "abdominal pain of consequence", nor as the hearing examiner noted is there any history of hemorrhage, secondary anemia or in-

tractable pain and surgery is not contemplated. This court, in reviewing the Secretary's decision, may not set it aside if such decision is supported by substantial evidence. Willis v. Gardner, 377 F. 2d 533 (4th Cir.1967). In reviewing the record of this case, we find that the Secretary's decision is supported by substantial evidence. In so deciding we agree with the Appeals Council that the two letters admitted into the record on claimant's behalf after the hearing examiner's decision, in no way affects the validity of that decision.

Accordingly, in view of the record as a whole, we think that a reasonable mind could very well have reached the same conclusion as did the Secretary— that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for summary judgment must be granted.