**Ralph MULLINS, Plaintiff,**

v.

**Robert FINCH, Secretary of Health, Education & Welfare (now Elliott Richardson), Defendant.**

**Civ. A. No. 69–C–118–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Nov. 19, 1970.

---

Robert T. Winston, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

This is an action brought by claimant, Ralph Mullins, under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking a review of the decision of the Secretary of Health, Education and Wel-

fare denying claimant's application for a period of disability and disability insurance benefits claimed under §§ 216(i) of the Act, 42 U.S.C., 416(i), and 223(d) of the Act as amended, 42 U.S.C. 423(d) (Cum.Supp.1969) respectively.

■■ Section 205(g) of the Act sets out the scope of the court's review providing that "The finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence" is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If the decision of the Secretary is supported by substantial evidence, that decision must be affirmed even though the reviewing court might disagree with the Secretary's decision. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir.1967).

The claimant filed an application for disability insurance benefits on July 17, 1968 alleging that he had been unable to work as of June 15, 1968, because of "arthritis and chest condition." On September 23, 1968, the application was denied by the disability examiner, and on October 3, 1968, the claimant, by his attorney, requested a reconsideration of his claim. On November 14, 1968, the original denial was affirmed. On November 21, 1968, claimant's attorney requested a hearing before a Hearing Examiner. A hearing was held on February 27, 1969, in Norton, Virginia. The medical evidence before the Hearing Examiner was a report of a physical examination of the claimant made by the Veteran's Administration on August 13, 1968 and a brief letter report from H. H. Howze, M.D., dated March 1, 1969, which was admitted into record by the Hearing Examiner on March 10, 1969.

The Hearing Examiner's decision, dated March 28, 1969, held that claimant was not entitled to establish a period of disability or to receive disability insurance benefits. On April 1, 1969, claimant's attorney notified the Social Security District Office that claimant requested the Appeals Council to review the Hearing Examiner's decision. As additional evidence which was considered by the Appeals Council, claimant furnished a medical report dated April 28, 1969, from Leonell C. Strong, Jr., M.D.

Prior to the review by the Appeals Council, the Council requested the Virginia State Department of Vocational Rehabilitation to arrange for claimant to undergo further medical tests, and, accordingly, on July 2, 1969, the claimant was examined and tested by John H. Willard, M. D., and Gilbert L. Hamilton, M.D.

On November 14, 1969, the Appeals Council affirmed the decision of the Hearing Examiner, and on November 18, 1969, the claimant instituted the present action.

Claimant was born on March 25, 1917, in Wise County, Virginia, and attended school through the fifth grade. He can read and write. Claimant worked in the coal mines as a hand loader for approximately eight years, until he enlisted in military service in 1940, serving until 1945, when he was honorably discharged. Claimant's chief duty in the service was cooking. For three years following his discharge, claimant worked as a section laborer on a railroad and as a coal miner. In 1948, he returned to military service and worked as a cook until 1952, when he was again honorably discharged. After his separation from military duty in 1952, claimant worked in the coal mines until 1958, when he began working on a part-time basis for a beer distributor, unloading cases of beer from boxcars. Claimant has not worked steadily since 1957, and he has not earned in excess of $800.00 during any year since 1957. He attributes his low earnings to his inability to obtain steady employment and because of his being periodically disabled. In 1967, claimant completed a sixteen-week cooking school at the Wise Technical School, and afterwards he worked as a cook at a drive-in restaurant, where his work was satisfactory. He was hired to work twelve hours a day and was to receive a salary of $300.00 per month. Claimant testi-

fied he had to quit the job at the restaurant after thirty days because his feet became swollen and painful. Afterwards, he says, he returned to part-time work unloading boxcars and was so employed until he quit work in June, 1968 because of his physical condition.

Claimant is married and has seven children; the eldest child is seventeen years old and the youngest is less than two years old. The family lives in a four-room house which is furnished rent-free by the owner. The only income which the family has is claimant's pension from the Veterans Administration, approximately $130.00 per month.

Besides complaints about swelling and pain in his ankles and feet, claimant testified that "chest trouble" caused him to get "weak and sick" in the "stomach and legs" approximately every other day. He also testified that he can walk only two or three blocks before he "smothers down" or "chokes down." His appetite is normal; he has not had an alcoholic drink for over a year; and he has not smoked for the past ten years, although he does use snuff. Claimant testified that all he is able to do is "just sit around the house" and watch television.

The medical evidence submitted is as follows:

On August 13, 1968, claimant was examined by John L. Harris, Jr., M.D., and Max Baumwell, M.D., for disability evaluation by the Veterans Administration. The examination included measurements of pulse, blood pressure, and respiration, as well as x-rays of claimant's feet and chest. The diagnosis of that examination was:

"1. Pes cavus bilateral, not appearing to be disabling.

2. Callouses of feet, plantar surface bilateral, 1st and 5th metatarsal areas and heels, not appearing to be disabling.

3. Moderately severe obstructive emphysema.

4. Hypertension not found.

5. Obesity."

The radiographic report made during this examination showed a "calcified plaque in the transverse aorta. No active lung disease was seen."

The Veterans Administration report concluded that the "moderately severe obstructive emphysema" produced a "moderate impairment of ventilatory function." There were no symptoms of dyspnea.

On March 1, 1969, H. H. Howze, M.D., wrote a letter to claimant's attorney in which he stated:

"I have seen Mr. Mullins several times in the office during 1968 for treatment for hypertension, obesity, osteoarthritis of the spine and feet. He has weak arches in his feet, which produce a metatarsalgia which is painful and disabling when walking or standing."

This was the extent of Dr. Howze's report, which contained no mention of specific tests performed or of any specific treatment carried out.

On April 28, 1968, Leonell C. Strong, Jr., M.D., wrote a letter to claimant's attorney in which Dr. Strong stated that he had examined claimant on April 3, 1969 and April 7, 1969. On the first visit, Dr. Strong found claimant to be "in heart failure complaining of headache and dizziness and was wheezing at night." "Blood pressure 180/120." Dr. Strong also found "pretibial edema with pulmonary congestion but no consolidation." Claimant was placed on an antihypertensive and digitalized.

At the time of the second visit, Dr. Strong found claimant "much improved" with blood pressure of 120/80. Dr. Strong concluded that "(Claimant) will probably be continued on medication for some time. His activities will be limited to some extent."

On July 2, 1969, at the request of the Appeals Council, the claimant was examined by John H. Willard, M.D., and underwent pulmonary function studies performed by Gilbert L. Hamilton, M.D.

The results of this examination are as follows:

"The chest x-ray showed the lung fields to be essentially clear and the heart was normal in size and shape * * *

* * * There was calcification in the arch of the aorta * * * Pulmonary function tests showed a mild decrease in vital capacity but within normal limits * * * Blood gas studies before and after exercise were entirely normal. An electrocardiogram and a Master's Two Step Test were reported as being within normal limits."

The conclusions as to claimant's physical condition reached by Dr. Willard were:

"Hypertensive cardiovascular disease * * * It was seen from this angle that patient would be able to perform sedentary to moderate activity on a moderate basis. Since there is no evidence of cardiac or renal disease, this patient should respond to regular therapeutic use of antihypertensive drugs."

"From a pulmonary standpoint, the diagnosis would be mild pulmonary insufficiency * * * * "

"The painful foot syndrome is undoubtedly due to the pes cavus in a large heavy man where excessive walking or standing may become painful. This could probably be benefitted by the addition of proper foot supports."

■ In proceedings under the Social Security Act, the weight given to clinical findings and physicians' diagnoses should depend upon the degree to which such findings and opinions are supported by "specific and complete clinical findings" and are consistent with other evidence of the claimant's physical impairment. Mullins v. Cohen, 296 F. Supp. 181, 185 (D.C.Va.1969).

■ Section 223(d) (3) of the Social Security Act, 42 U.S.C. 423(d) (3) as amended, requires that the physical or mental impairment producing a claimant's disability must be one which results from a condition which is demonstrable by "medically acceptable clinical and laboratory diagnostic techniques." [1]

■ From an examination of the evidence, there is no doubt that claimant suffers from a number of physical ailments. In evaluating the effects of such ailments, the Secretary must consider their total effect upon the claimant. Thus, the ultimate issue that was before the Appeals Council was whether or not these maladies produced a cumulative effect which placed claimant under a "disability" as defined in § 223(d) of the Act.

The burden of proof was not upon the Secretary to negate the existence of claimant's alleged disability but rather upon the claimant to show that he was under a disability. Griffey v. Cohen, 299 F.Supp. 714 (D.C.Va.1969), affd. Griffey v. Finch, 421 F.2d 187 (4th Cir. 1970). Of course, this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964).

■ To carry his burden of proof, the claimant must show that his physical or mental impairments are of such severity that, considering his age, education, and work experience, he is unable to engage in any kind of substantial gainful work which exists in significant numbers in the region where the claimant lives or in several regions of the country. It is immaterial that such work· does not exist· in the immediate area in which claimant lives. It is also immaterial that there actually exists no job vacancy in any region of the country. Further, it is of no consequence that claimant would not be hired for the particular type work. As long as claimant is physically and mentally able to do

1. For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

such work, he is not under a "disability." 42 U.S.C., § 423(d).

The Congressional intention for such an interpretation of § 223 of the Act as amended is specifically set forth in the Senate Report pertaining to the Social Security Amendments of 1967. In that report, the Senate Finance Committee, in the general discussion of the bill, said: "While such factors as whether the work he could do exists in his local area, or whether there are job openings, or whether he would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disabled under this definition." [2]

From the evidence produced, the Appeals Council concluded that claimant's impairments did not preclude him from working as a cook or as a part-time laborer and affirmed the Hearing Examiner.

The court considers it a matter of common knowledge that laborers and trained and experienced cooks are employed in substantial numbers throughout all regions of the country. An administrative body such as the Appeals Council should not disregard common knowledge but should utilize such knowledge in reaching its decisions. Continental Can Company v. United States, 272 F.2d 312, 315 (2nd Cir. 1959).

In the opinion of the court, the decision of the Secretary is supported by substantial evidence. Among other evidence in support of the Secretary, the report of Drs. Willard and Hamilton negates a disease or malfunction of the heart or lungs of any degree of severity sufficient to impair plaintiff's capacity to do moderate work, and shows that his foot condition, high arches, can probably be remedied by arch supports. The decision of the Secretary is reinforced by the fact that plaintiff earned but very little, in some years almost nothing, in the years he was admittedly capable of working and not in service (1946, 1947, 1953–1967 inclusive, Tr. p. 79).

Accordingly an order is this day entered granting defendant's, and denying plaintiff's, motion for summary judgment.

---

2. S.Rep.No.744 to H.R. 12080, appearing in 2 U.S.Code Cong. & Admin.News, 90th Cong. 2d Sess. pp. 2834, 2882 (1967).